UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DENISE ADAMS HILL,**

**Plaintiff,**

v.

**MERRICK GARLAND**, *et al.*,

**Defendants.**

Civil Action No. 19-3389 (JEB)

<u>**MEMORANDUM OPINION**</u>

Plaintiff Denise Adams Hill, a Black woman over the age of sixty, worked as a contract attorney for the Department of Justice for approximately two and one-half years.  Unhappy with her treatment there and particularly the Government's decision to terminate her employment in 2017, she brought this suit alleging a number of discriminatory actions by her supervisors in violation of Title VII and the Age Discrimination in Employment Act.  The Government Defendants now move to dismiss those claims or, alternatively — even though no discovery has yet occurred — for summary judgment.  Hill counters with a request for such discovery, pointing to several categories of documents in the Government's possession that she insists are necessary to support her allegations.  Concluding that Defendants cannot yet bring the entire case to a close at this early juncture, the Court will grant their Motion in part, thereby dismissing Plaintiff's claims as they pertain to four asserted incidents of discrimination, while granting her entreaty for discovery as to the remaining two.

**I.    Background**

Although Defendants style their Motion as both a bid for dismissal of the Amended Complaint and for summary judgment, for reasons that will soon become clear, the Court will

1

decline to entertain the latter request at present.  It thus draws the relevant facts from the

Amended Complaint, treating them as true and reciting them in the light most favorable to Hill.

Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

In 2015, Plaintiff's employer — an Alaskan contracting company now called STS

Systems Integration, LLC — assigned her to work as a co-employee contract attorney within

DOJ's Public Safety Officers' Benefits Office.  See ECF No. 5 (Am. Compl.), ¶¶ 3, 8–9.  In that

role, she reviewed death and disability claims filed on behalf of public-safety officers,

commented on their legal sufficiency, and offered initial recommendations as to their merit.  Id.,

¶ 11.  Although precise staffing levels fluctuated over the course of her employment, PSOB

generally maintained at least two other contract attorneys who combined with Hill to handle

initial recommendations, with additional lawyers staffed on later stages of the review and appeal

process.  Id., ¶¶ 18, 26–27.  Plaintiff was the oldest attorney working in her PSOB unit, as well

as the only initial-recommendation attorney over the age of 40.  Id., ¶¶ 12, 29.  From the date of

her hiring through at least the end of her employment, no one over 40 — and no women at all —

were offered promotions or positions within the STS-PSOB program.  Id., ¶ 40.

Most of Hill's complaints regarding her tenure at DOJ revolve around her principal

supervisor, Michael Daugherty, who served as PSOB's legal counsel.  Id., ¶ 10.  To start, she

asserts that Daugherty directed certain "ageist comments" her way, including about her

"extensive" work experience and his belief that she was "overqualified" for the contract position

for which she applied and ultimately obtained.  Id., ¶¶ 13–14.  Despite those purported encomia

as to her experience, however, Daugherty "never considered" her for permanent federal

employment opportunities available within PSOB, such as a Grade 13 position for which she

unsuccessfully applied in early 2016.  Id., ¶¶ 15–16.  An "experienced" male attorney over age

55 from another government department was similarly passed over, and the job eventually went to a 29-year-old Black male.  Id., ¶ 17.

Hill recalls a number of other incidents in which Daugherty behaved in a "disparaging manner" toward her.  Id., ¶ 19.  For instance, he "implicitly or explicitly chastised [her] for questioning or scrutinizing claims decisions" and "loudly" threatened to "send [her] home" during a team meeting.  Id., ¶¶ 19, 21–22.  Daugherty also allegedly criticized Plaintiff's work product to a colleague and made additional comments during meetings that she interpreted as veiled barbs regarding her output.  Id., ¶¶ 20, 34–35.  Hill maintains that she "never heard Daugherty disparage the work of other [contract attorneys] at the PSOB."  Id., ¶ 25.

Plaintiff's problems came to a head during a chain of events that culminated in her termination.  Throughout 2016 and 2017, she informed Daugherty that the initial-recommendation attorneys were at times close to running out of claims to review.  Id., ¶ 26.  Indeed, as of May 1, 2017, they "had run completely out of work."  Id., ¶ 39.  Despite this dearth of assignments, the Government hired two more initial-recommendation contract attorneys in 2017.  Id., ¶¶ 26–27, 29.  In addition, while the decline in claims affected all of the attorneys, Hill insists that her supervisors still offered her colleagues new types of assignments while declining to similarly expand her workload.  Id., ¶¶ 30–32.  To Plaintiff, these decisions were neither coincidental nor unintended; rather, Daugherty and others "withheld work assignments from [her] in order to have a pretextual reason to terminate [her]."  Id., ¶ 30; see also id., ¶¶ 37–38 (similar); id., ¶ 52 (alleging that supervisors "withh[eld] scores of cases to make it appear that there was not enough work for the contract attorneys to handle").  That was so, she believes, even though she had never received a complaint about her work product or a negative performance evaluation.  Id., ¶¶ 36, 41.

The fateful day ultimately arrived on September 22, 2017, when Hill's STS supervisor informed her that her employment contract had been terminated.  Id., ¶ 42.  Although Plaintiff believed that she had seniority over another White male contract attorney under the age of 40, and although her supervisor stated that he had never received any negative information regarding her performance, he indicated that Daugherty had requested the termination based upon the "quality and quantity" of her work.  Id., ¶¶ 42, 52.  The supervisor also told Hill that "[Daugherty] did not like [her]."  Id., ¶ 46 (first alteration in original).  According to Plaintiff, immediately following her last day, the remaining contract attorneys received approximately 30 new claims.  Id., ¶ 49.

Hill eventually filed a formal Equal Employment Opportunity complaint regarding some of the aforementioned conduct, commencing an administrative process that culminated in an adverse Final Agency Decision from DOJ.  Id., ¶ 7.  She then brought this action on November 8, 2019.  See ECF No. 1 (Compl.).  Her Amended Complaint — which names as Defendants the United States, then-Attorney General William Barr, and two other DOJ officials — alleges discrimination based on race, gender, and age, in violation of Title VII and the ADEA.  See Am. Compl., ¶¶ 54–64.  The Government now moves to dismiss or for summary judgment.  See ECF No. 15 (Def. Mot.).  Having opposed, Plaintiff responds with her own Motion seeking discovery pursuant to Federal Rule of Civil Procedure 56(d).  See ECF Nos. 25 (Pl. Opp.), 26 (Pl. 56(d) Mot.).

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  In weighing a motion to dismiss, a court may consider only "the facts alleged in the complaint, documents attached as

exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies." Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (cleaned up) (citations omitted); see Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). Although "'detailed factual allegations'" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). A court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Summary judgment, on the other hand, shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). "In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party." Coss v. U.S. Dep't of Justice, 133 F. Supp. 3d 1, 3 (D.D.C. 2015) (citing Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006)). The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987).

Summary judgment, notably, is generally premature "unless all parties have 'had a full opportunity to conduct discovery.'" <u>Convertino v. U.S. Dep't of Justice</u>, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting <u>Anderson</u>, 477 U.S. at 257).  Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it," or "allow time to obtain affidavits or declarations or to take discovery."  Such a request for discovery must 1) "outline the particular facts she intends to discover and describe why those facts are necessary to the litigation"; 2) "explain why she could not produce the facts in opposition to the motion for summary judgment"; and 3) "show the information is in fact discoverable."  <u>Convertino</u>, 684 F.3d at 99–100 (cleaned up) (citations omitted).

## III.    Analysis

As an initial matter, Plaintiff concedes that two of the four Defendants named in her Amended Complaint — to wit, Jill Anderson and Steven Engel, both DOJ officials sued in their official capacities — are not proper parties to this action.  <u>See</u> Pl. Opp. at 3, 17–18.  Neither is a third, the "United States Government."  <u>See</u> 42 U.S.C. § 2000e–16(c); <u>Wilson v. U.S. Dep't of Transp.</u>, 759 F. Supp. 2d 55, 67 (D.D.C. 2011) ("[T]he only proper defendant in suits brought under [Title VII and the ADEA] is the head of the department or agency being sued.").  The Court will therefore dismiss all claims against these Defendants, leaving only the Attorney General, who is automatically substituted for his predecessor.  <u>See</u> Fed. R. Civ. P. 25(d).

With that housekeeping accomplished, the Court turns to Hill's various assertions of discrimination based on her race, gender, and age.  While her Amended Complaint covers a litany of incidents, her Opposition clarifies that her supervisors allegedly violated Title VII and the ADEA by: 1) not selecting her for a permanent position in April 2016; 2) failing to meet with

her to discuss her performance; 3) yelling at and humiliating her in front of her co-workers; 4) claiming that she was not working as quickly as her co-workers; 5) assigning her an insufficient amount of work; and 6) terminating her employment.  See Pl. Opp. at 2.  The Court will begin with Defendant's contention that Hill did not exhaust her administrative remedies with respect to the first incident and next addresses its bid to dispose of the remaining five allegedly discriminatory actions.

### A.  Exhaustion

Before the Court explains why Plaintiff's April 2016 non-selection claim should be dismissed, a brief procedural prelude is necessary.  In considering the parties' exhaustion arguments, the Court relies on DOJ's Final Agency Decision and Hill's EEO complaints, which it may properly do in resolving the Motion to Dismiss given the Amended Complaint's own reference to the documents on this issue.  See Am. Compl., ¶ 7; *supra* at 4–5; see also, e.g., Vasser v. McDonald, 228 F. Supp. 3d 1, 11 (D.D.C. 2016) (considering Final Agency Decision, as well as formal and informal EEO complaints, when resolving motion to dismiss on exhaustion grounds).  At any rate, even if the Court were to treat Defendant's Motion as one for summary judgment solely on the issue of exhaustion, see Mount v. Johnson, 36 F. Supp. 3d 74, 81–82 (D.D.C. 2014), the Court could still resolve it here.  That is because Hill's own Opposition refers to a separate document not mentioned in the Amended Complaint when discussing exhaustion, see Pl. Opp. at 19 (citing affidavit), and because the record does not suggest, nor does her Rule 56(d) filing articulate, any discovery that would be necessary to oppose Defendant's Motion as it relates to exhaustion.  See Rosier v. Holder, 833 F. Supp. 2d 1, 5 (D.D.C. 2011) (treating motion as one for summary judgment regarding exhaustion where parties "refer[red] to documents outside of the complaint" and record contained "nothing . . . which might indicate the parties did

not have a reasonable opportunity to present all pertinent material"); Sierra v. Hayden, 254 F.

Supp. 3d 230, 238 (D.D.C. 2017) (dismissing claims on exhaustion grounds while noting result

would likely be same under summary-judgment standard, where plaintiff's Rule 56(d) filing did

not identify any potentially relevant discovery).

 Discrimination complainants must timely exhaust their administrative remedies before

filing a Title VII or ADEA action in federal court.  See 42 U.S.C. § 2000e–16(c) (Title VII); 29

U.S.C § 633a(b)–(d) (ADEA); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997).  As

relevant here, an "[a]ggrieved person[] who believe[s she has] been discriminated against on the

basis of race, . . . sex, . . . [or] age," 29 C.F.R. § 1614.105(a), "must initiate contact with [an

EEO] Counselor within 45 days" of the allegedly discriminatory conduct.  Id. § 1614.105(a)(1).

Unless the employee provides an acceptable ground for tolling the 45-day limit, failure to contact

an EEO counselor within that period serves as a bar to her claims.  See Stewart v. Ashcroft, 352

F.3d 422, 425–26 (D.C. Cir. 2003); 29 C.F.R. § 1614.105(a)(2).

 "An employee must exhaust the administrative process for each discrete action for which

she seeks to bring a claim."  Huang v. Wheeler, 215 F. Supp. 3d 100, 111 (D.D.C. 2016)

(citations omitted); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)

(explaining that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging

that act").  Because these exhaustion requirements are not jurisdictional, Artis v. Bernanke, 630

F.3d 1031, 1034 n.4 (D.C. Cir. 2011), the defendant bears the burden of establishing untimely

exhaustion.  Bowden, 106 F.3d at 437.  Once it has done so, the obligation shifts to the plaintiff

to support avoidance of the exhaustion bar, such as by asserting equitable defenses.  Id.

 The Government has easily carried its burden here, as it is undisputed that Hill did not

satisfy the 45-day time limit for initiating contact with an EEO counselor regarding her April

2016 non-selection for a permanent position.  Indeed, the Final Agency Decision and Plaintiff's

EEO complaint readily confirm that she did not contact a counselor until November 2, 2017.  See

ECF No. 15-1 (Final Agency Decision) at ECF pp. 7–8; ECF No. 15-3 (Informal Compl.) at ECF

p. 2.  That puts her well outside the mandatory 45-day period for raising her allegations at the

administrative level, as the clock began ticking at the moment of her non-selection a year and a

half earlier.  See 29 C.F.R. § 1614.105(a)(1); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132,

138 (D.D.C. 2004) (explaining that "'[d]iscrete acts such as . . . refusal to hire' are individual

acts that 'occur' at a fixed time") (quoting Morgan, 536 U.S. at 114); Vasser, 228 F. Supp. 3d at

13–15 (similar).  Plaintiff, accordingly, did not timely exhaust her administrative remedies with

respect to this particular incident.  See Rafi v. Sebelius, 377 F. App'x 24, 25 (D.C. Cir. 2010)

(affirming district court's dismissal of Title VII and ADEA claims because plaintiff had not

initiated EEO contact within 45 days of allegedly discriminatory hiring practice).  (Plaintiff

never mentions, nor could she rely on, an alternative route for an employee asserting age

discrimination, who may properly "bring a claim directly to federal court so long as, within 180

days of the allegedly discriminatory act, [she] provides the EEOC with notice of [her] intent to

sue at least 30 days before commencing suit."  Rann v. Chao, 346 F.3d 192, 195 (D.C. Cir.

2003).)

     Having dug herself into this exhaustion hole, Hill mounts two brief efforts to climb out.

Neither succeeds.  For starters, she argues that it would be "inappropriate" for the Court to

entertain Defendant's exhaustion defense because it did not first "raise[] the argument that

Plaintiff's [non-selection] claim . . . was time-barred at the administrative level."  Pl. Opp. at 19;

see Bowden, 106 F.3d at 438–39 (explaining that government can "waive" (more precisely,

forfeit) defense that plaintiff failed to comply with EEOC time limits).  Hill, however, has not

come close to carrying her burden to establish forfeiture, see Terveer v. Billington, 34 F. Supp. 3d 100, 114 (D.D.C. 2014), for the Final Agency Decision reveals that the agency did consider the very argument that she claims was never raised.  That is, DOJ "dismissed" her discriminatory non-selection claim as "untimely" because she did not initiate contact with an EEO counselor "within 45 days of the selection that occurred in April 2016."  Final Agency Decision at ECF p. 8.  This disposition affirmed a lower-level administrative decision dismissing Hill's claim on the same grounds.  Id. at ECF pp. 7–8.  There is thus no basis for this Court to sweep aside the Government's well-preserved exhaustion defense now.  See Sierra, 254 F. Supp. 3d at 240–41 (finding agency's exhaustion defense not "waived" where administrative decision dismissed plaintiff's claim as untimely).

Although it requires slightly more discussion, Hill's final shot likewise clangs off the rim. Citing an affidavit prepared for this proceeding, her Opposition asks the Court to excuse her failure to exhaust because she was "not notified . . . [or] aware of" the 45-day time limit and "did not receive EEO training regarding" it.  See Pl. Opp. at 19 (citing ECF No. 25-3 (Pl. Aff.), ¶ 33). It is true that an agency must "extend the 45-day time limit" when a complainant shows that "she was not notified of the time limits and was not otherwise aware of them."  29 C.F.R. § 1614.105(a)(2).  The problem for Plaintiff, however, is that she is hoist with her own forfeiture petard, as she never made this argument during her administrative proceedings.  Instead, she maintained, through her attorney, that the time limit should have been tolled for an entirely different reason — namely, because she "did not have sufficient information" at the time of her non-selection "to determine that the personnel decision was motivated by discriminatory animus."  Final Agency Decision at ECF p. 8; see also Informal Compl. at ECF p. 3 (asserting only that Plaintiff missed 45-day deadline because "she did not realize she had been subjected to

disparate treatment" until after reporting window); 29 C.F.R. § 1614.105(a)(2) (requiring agency

to extend 45-day limit where complainant establishes that "she did not know and reasonably

should not have . . . known that the discriminatory matter or personnel action occurred").  The

agency's adjudicator easily tossed that argument aside, see Final Agency Decision at ECF p. 8,

and Hill makes no mention of it before this Court, even as she advances an entirely novel excuse

for her non-exhaustion of her non-selection claim — i.e., her asserted unawareness of the 45-day

time limit.

The requirement that aggrieved individuals initiate discrimination complaints within their

relevant agencies "is part and parcel of the congressional design to vest in the federal

agencies . . . 'primary responsibility'" for investigating and resolving such complaints, so as to

"maintain[] nondiscrimination in employment." Kizas v. Webster, 707 F.2d 524, 545 (D.C. Cir.

1983) (quoting 42 U.S.C. § 2000e–16(e)).  Both "simple respect for Congress's aim and simple

fairness to the agency" demand that courts decline to consider arguments for tolling the 45-day

deadline not initially pressed or passed upon during administrative proceedings, particularly

when (as here) other grounds for tolling were invoked.  See Winston v. Clough, 712 F. Supp. 2d

1, 9–10 (D.D.C. 2010).  The relevant regulatory text reinforces this understanding, requiring the

"agency" or "[EEOC]" to extend the 45-day time limit "when the individual shows" that she did

not have notice of it.  See 29 C.F.R. § 1614.105(a)(2) (emphasis added).  This Court cannot find

that the agency should have relaxed that deadline when Plaintiff did not even inform it of the

precise basis she now claims entitled her to an extension.

For these reasons, courts in similar circumstances have turned away plaintiffs' arguments

aimed at excusing their failure to timely exhaust when they did not first raise those arguments in

administrative proceedings.  See, e.g., Winston, 712 F. Supp. 2d at 9–10 (holding that

11

discrimination plaintiff waived argument regarding lack of notice when he "said nothing about lacking notice of the 45-day time limit in his EEO complaint," even though he raised in administrative proceedings other reasons for his untimeliness); Doe v. Brennan, 980 F. Supp. 2d 730, 736 (E.D. Va. 2013) ("Where a plaintiff does not affirmatively raise the issue that he lacked notice and should be entitled to an extension during the administrative process, he has waived that notice argument in an appeal in federal court."), aff'd, 584 F. App'x 166 (4th Cir. 2014); Jones v. DeJoy, No. 18-1213, 2020 WL 6716218, at *5 (N.D. Ill. Nov. 16, 2020) (similar). Plaintiff's identical position meets the same fate. The Court, accordingly, will not entertain her newfound exhaustion contention, finally raised four and one-half years after the event at issue, and it will dismiss her discriminatory non-selection claim as not timely exhausted.

B.  Remaining Discrimination Claims

Defendant does not gainsay that Hill properly exhausted her remaining allegations of discrimination. The objectionable conduct, as a reminder, involves her supervisors' 1) failing to meet with her to discuss her performance; 2) yelling at and humiliating her in front of her co-workers; 3) claiming that she was not working as quickly as her co-workers; 4) assigning her an insufficient amount of work; and 5) terminating her employment. See Pl. Opp. at 2. For the reasons that follow, the Court will dismiss Hill's allegations with respect to the initial three and grant her request for discovery as to the last two.

1.  *Non-Adverse Actions*

The Court can make short work of the first trio of contentions. At the motion-to-dismiss stage, a plaintiff claiming discrimination under Title VII and the ADEA must establish "two essential elements": that she (i) "suffered an adverse employment action (ii) because of [her] race, . . . sex, . . . [or] age." Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008); but

see Babb v. Wilkie, 140 S. Ct. 1168, 1173–74 (2020) (holding in ADEA case that liability attaches if relevant personnel action is made in a way "tainted by differential treatment based on age").  Of particular relevance here is the initial adverse-action requirement, which a plaintiff satisfies by identifying "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).  Many workplace slights or purely subjective harms — such as "dissatisfaction with a reassignment," "public humiliation," or "loss of reputation" — do not rise to the level of adverse actions.  Forkkio v. Powell, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002).  The threshold is met only if the employee "experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  Czekalski v. LaHood, 589 F.3d 449, 454 (D.C. Cir. 2009) (quoting Forkkio, 306 F.3d at 1131).

Defendant contends that Hill's allegations regarding her supervisors' failing to meet with her, yelling at her, and claiming she worked inefficiently all flunk this initial screen.  See Def. Mot. at 10–11.  The Court agrees that these incidents, as presently pled, are merely subjective harms and typical workplace slights that do not qualify as adverse actions, as Plaintiff does not connect them to any "materially adverse consequences" affecting the conditions of her employment or establish "objectively tangible harm."  Czekalski, 589 F.3d at 454; see also Morales v. Gotbaum, 42 F. Supp. 3d 175, 189–90 (D.D.C. 2014).  In fact, Hill's Opposition never directly addresses these allegations or Defendant's arguments concerning them.  "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss

addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citations omitted).  The Court will thus dismiss Hill's claims as they pertain to these particular allegations.

2. *Rule 56(d)*

That leaves but two remaining incidents of asserted discrimination: the reduction in Plaintiff's workload and the termination of her employment.  It is here, however, that the Government's luck runs out, for the Court finds its submissions insufficient to dispose of either at the present juncture.

Start with the first — to wit, Hill's contention that her supervisors deliberately limited her workload as part of a scheme aimed at undermining her productivity.  See Am. Compl., ¶¶ 30–31, 36–37, 49.  As to this claim, Defendant never clarifies whether it seeks dismissal or summary judgment.  To the extent it hopes to obtain the former disposition, the Government is unsuccessful because it proceeds not by assuming the truth of Plaintiff's allegations and demonstrating their legal insufficiency — as required at the motion-to-dismiss stage, see Twombly, 550 U.S. at 555–56 — but rather by arguing that certain of the Amended Complaint's allegations are simply unfounded in light of contrary evidence outside the pleadings.  See Def. Mot. at 10 (arguing, via citation to emails and administrative affidavits, that "nothing in the record supports [Hill's] allegations" regarding Daugherty's withholding cases from her and assigning dozens of new claims to attorneys following her termination); id. at 15 (similar). These factual arguments, of course, can only be resolved by treating Defendant's Motion as one for summary judgment.  See White v. Vilsack, 888 F. Supp. 2d 93, 99–100 (D.D.C. 2012) (treating motion as one for summary judgment where defendant presented material outside of

pleadings) (citing <u>Holy Land Found. for Relief & Dev. v. Ashcroft</u>, 333 F.3d 156, 165 (D.C. Cir. 2003)).

The Government's handling of Hill's termination claim offers less ambiguity.  Although conceding that firing an employee clears the adverse-action bar, Defendant maintains that it had "legitimate, non-discriminatory business reasons" for relieving Plaintiff of her services — most notably, the fact that she was an "obvious poor performer who did significantly less work than other contract attorneys."  Def. Mot. at 13.  In order to support that contention, the Government draws extensively from extra-pleading evidence, <u>id.</u> at 13–15 (citing array of emails and administrative testimony), and it explicitly asks for "summary judgment" on the cause of action. <u>Id.</u> at 16.  Once again, then, its Motion may not properly be considered one to dismiss the termination claim, but instead one for summary judgment.

As a brief aside, the Court acknowledges that although Defendant's opening brief exclusively requests summary judgment on Hill's termination claim, eschewing any effort to dismiss it under Rule 12(b)(6), its Reply (for the first time) seeks the latter disposition as an alternative to the former.  <u>See</u> ECF No. 29 (Def. Reply) at 7–12.  The Government, however, cannot use its Reply to spring on Plaintiff a newfound bid to dismiss a particular claim — including new arguments to that effect — when its opening salvo sought only summary judgment.  <u>See</u> <u>Citizens Ass'n of Georgetown v. Fed. Aviation Ass'n</u>, 896 F.3d 425, 434 (D.C. Cir. 2018) (explaining that arguments not made until reply, even if factual foundation is laid in opening brief, are forfeited).

The Court is thus left with two claims of discrimination for which Defendant seeks summary judgment, even though it has not yet filed an Answer and even though no discovery has occurred.  Our Circuit has cautioned that "summary judgment is premature unless all parties

have 'had a full opportunity to conduct discovery.'" Convertino, 684 F.3d at 99 (quoting

Anderson, 477 U.S. at 257); see also, e.g., White, 888 F. Supp. 2d at 100 ("Generally, the court

is reluctant to consider a motion for summary judgment prior to discovery."). Invoking Rule

56(d), Hill asks this Court to deny or defer ruling on Defendant's Motion and provide it that very

chance. See Pl. Opp. at 4 ("Defendants made specific contentions which, without the

opportunity to engage in discovery, Plaintiff cannot present evidence to fully oppose . . . .").

 A non-moving party's bid for "additional discovery should be granted 'almost as a matter

of course unless the . . . party has not diligently pursued discovery of the evidence.'"

Convertino, 684 F.3d at 99 (quoting Berkeley v. Home Ins. Co., 68 F.3d 1409, 1414 (D.C. Cir.

1995)). As a reminder, a litigant's request for discovery under Rule 56(d) must 1) "outline the

particular facts she intends to discover and describe why those facts are necessary to the

litigation"; 2) "explain why she could not produce the facts in opposition to the motion for

summary judgment"; and 3) "show the information is in fact discoverable." Id. at 99–100

(cleaned up) (citations omitted).

 Plaintiff checks each of these boxes. There can be no dispute as to the second, as Hill

identifies several distinct categories of Government documents unavailable to her absent

discovery. See Pl. 56(d) Mot. at 2–3; ECF No. 32 (Pl. 56(d) Reply) at 9. The same goes for

whether the information is "discoverable," Convertino, 684 F.3d at 100, as the requested files

appear both relevant and proportional to the claims and needs of the case. Defendant neither

suggests otherwise nor contends that the documents do not exist or are privileged.

 The Government chiefly (albeit rather briefly) stakes its defense on the first requirement,

maintaining that Hill has not established that the facts she seeks are "necessary to the litigation."

ECF No. 30 (Def. 56(d) Opp.) at 9. The Court cannot concur and finds that Plaintiff's showing

16

on this prong confirms the propriety of a discovery period.  Many of her documentary requests

go to the heart of her claims, focusing on information that she professes will establish that the

Government's "proffered legitimate nondiscriminatory reasons for her termination" — namely,

her poor performance and relative inefficiency — "were pretextual for unlawful discrimination."

Pl. Opp. at 4; see Brady v. Off. of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008)

(explaining in Title VII case that, where employee has suffered adverse employment action and

employer has asserted legitimate, non-discriminatory reason for decision, sole question is

whether employee has "produced sufficient evidence for a reasonable jury to find that the

employer's asserted non-discriminatory reason was not the actual reason and that the employer

intentionally discriminated against the employee").  To that end, she principally pursues

information comparing her performance with that of her fellow initial-recommendation

attorneys, whom she identifies as similarly situated employees outside her protected groups,

none of whom was terminated.  See Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1115

(D.C. Cir. 2016) (explaining that evidence of "employer's better treatment of similarly situated

employees outside the plaintiff's protected group" may support inference that employer's stated

reasons for adverse employment action were pretextual) (quoting Walker v. Johnson, 798 F.3d

1085, 1092 (D.C. Cir. 2015)).

For example, in order to establish that she was "processing more complex claims" than

her peer attorneys, Hill seeks records specifying the nature and difficulty of work each was

assigned, along with the time needed to complete it.  See Pl. 56(d) Mot. at 2.  To support her

further belief that she "conduct[ed] more thorough analysis of claims assigned to her" than her

colleagues, she requests documents revealing the level of detail within the various attorneys'

claims determinations.  Id.  Finally, to demonstrate her superior compliance with the

Government's "written policies and procedures" *vis-à-vis* her associates, she pursues accounts specifying their relative tardiness and disciplinary actions incurred.  Id. at 2–3.  According to Hill, such information will enable her to show that she performed both "to the legitimate expectations of her supervisors" and in a "manner that exceeded her similarly-situated co-workers outside[] her protected classes," id. at 2, thus permitting an inference that the Government's stated explanation for her termination was pretextual.  See Pl. 56(d) Reply at 10–11.

 Hill also identifies materials relevant to her related claim that Defendant discriminated against her by reducing her workload and withholding assignments.  Specifically, she seeks documents "specifying the frequency and volume of assignment of work to both Plaintiff and her comparators," as well as "the exact periods of heavy and light caseloads the PSOB team experienced," over the course of her employment.  See Pl. 56(d) Mot. at 2–3.  The Court believes that this information would prove useful in determining whether there exists a genuine dispute as to whether Hill's supervisors in fact withheld work from her, as necessary to establish an adverse employment action here.  See Pl. Opp. at 21 ("Defendants . . . fail[ed] to assign Plaintiff adequate work, and this is an actionable adverse action because it led to her termination."); see also Morales, 42 F. Supp. 3d at 190 (explaining that "[c]ourts have previously found objectively tangible harms where the adverse action results in a 'significant change in employment status,'" such as termination of employment) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)); Brownfield v. Bair, 541 F. Supp. 2d 35, 45 (D.D.C. 2008) (determining that reduction in work assignments qualified as adverse employment action where it led to objectively tangible harm in form of lower pay raise).

In these circumstances — where Plaintiff has identified numerous categories of documentary evidence that are plausibly necessary to support her discrimination claims, where the information sought is not already contained in the record, and where no discovery has yet occurred — the Court concludes that ruling on Defendant's summary-judgment Motion would be premature.  See Blue v. Jackson, 860 F. Supp. 2d 67, 78 (D.D.C. 2012) ("Given [plaintiff's] stated need for discovery to rebut the legitimate reasons that Defendant proffers for his termination, the Court agrees that it would be premature to grant summary judgment before [plaintiff] has been afforded any opportunity to develop facts to support his argument of pretext.") (citation omitted); Williams v. Donovan, 219 F. Supp. 3d 167, 182 (D.D.C. 2016) (deeming summary-judgment motion premature where discovery had not yet occurred, even though both parties cited exhibits from administrative proceedings).  It will thus deny the relevant portions of Defendant's Motion without prejudice and grant Hill's 56(d) request.

* * *

Two final points merit brief mention.  First, Defendant is correct that the two affidavits referenced in Plaintiff's 56(d) filing — as distinct from the Memorandum itself and Hill's Opposition brief — neither articulate nor justify the discovery she seeks, as technically required under the rule.  See Pl. 56(d) Mot. at 2 (citing affidavits); Fed. R. Civ. P. 56(d) (requiring party to demonstrate entitlement to discovery "by affidavit or declaration").  The D.C. Circuit, however, has instructed that district courts take a "generous approach" to 56(d) motions, holding parties to the rule's "spirit rather than its letter."  Convertino, 684 F.3d at 99, 102 (citations omitted).  Indeed, the Court of Appeals "regularly" looks to a litigant's briefing when determining the merit of such motions, just as the Court has done here.  Jeffries v. Barr, 965 F.3d 843, 855 (D.C. Cir. 2020); see also, e.g., Richie v. Vilsack, 287 F.R.D. 103, 106 (D.D.C. 2012)

(drawing from plaintiff's briefing to grant 56(d) motion even though declaration said nothing about need for discovery on particular claim, noting that "technical error" did not doom motion).

Finally, although Plaintiff parries Defendant's current thrust to bring the case to a close, the Court cannot end without remarking on the apparent force of the Government's explanations for the fluctuations in Hill's workload and her ultimate termination.  Indeed, upon initial review, evidence developed during the administrative proceedings appears to squarely undermine some of the core factual assertions contained in the Amended Complaint.  The Court, of course, will reserve judgment until Plaintiff has the opportunity to bolster her claims with the requested discovery.  It suffices to note for now that she may have an uphill battle should Defendant elect to renew its summary-judgment motion at a later date.

## IV.    Conclusion

The Court, accordingly, will grant in part and deny in part Defendant's Motion to Dismiss or for Summary Judgment, and it will grant Plaintiff's Motion for Discovery.  It will dismiss Defendants Anderson, Engel, and the United States, as well as all of Hill's discrimination claims except those pertaining to her alleged reduction in workload and termination.  A separate Order so stating will issue this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  March 15, 2021